IN THE MATTER OF THE ESTATE OF
G. LEONARD ERICSON, DECEASED.

FIRST CHARTER NATIONAL BANK, EXECUTOR OF THE
WILL OF G. LEONARD ERICSON, PLAINTIFF-RESPON-
DENT, v. HELEN ERICSON, DEFENDANT-RESPONDENT,
AND DIANE FRANKLIN, PAULINE KLEPPER, WILLIAM
KLEPPER, JOHN EDWARD ERICSON, JOHN E. ERIC-
SON, JR., JANE ERICSON AND LYNN FRANKLIN SEW-
ARD, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued March 23, 1976—Decided April 21, 1976.

Before Judges Matthews, Lora and Morgan.

*Mr. Woodruff J. English,* argued the cause for appellants (*Messrs. McCarter and English,* attorneys).

*Mr. Harrison F. Durand* argued the cause for respondent First Charter National Bank, executor of the will of G. Leonard Ericson (*Messrs. Durand, Twombly and Im-*

*briaco,* attorneys; *Mr. B. Theodore Bozonelis,* of counsel and on the brief).

*Mr. Alfred C. Clapp* argued the cause for respondent Helen Ericson (*Messrs. Clapp and Eisenberg,* attorneys).

PER CURIAM. G. Leonard Ericson died December 4, 1969 survived by his wife Helen Ericson. The couple had no children. His will, dated March 22, 1967, was admitted to probate. On March 7, 1967 Ericson had executed an irrevocable *inter vivos* trust and on March 9, 1967 he had executed an earlier will. The widow is the life beneficiary and Ericson's nieces and nephews and their children are remaindermen of the *inter vivos* trust. The corpus of this trust consisted of International Business Machines stock worth $1,096,250 when created and $1,598,722.86 on the date of his death. The estate passing under the will was valued at $2,020,620.49 on the date of his death.

Internal Revenue Service has included the *inter vivos* trust within Ericson's adjusted gross estate in accordance with the presumption that a trust created within three years of death is in contemplation of death. Ericson was 75 years of age and in apparent good health on March 7, 1967, and the record indicates that he expected to live for many more years.

Article IV 1(a) of the will admitted to probate, divided the residuary estate into two parts as follows:

If my wife survives me, I give and bequeath to her "Part A" of my residuary estate which shall be that fraction of my entire residuary estate which shall secure for my estate the maximum marital deduction allowable under the Federal Estate tax law. The numerator of this fraction shall be one-half of my adjusted gross estate (as defined in the Internal Revenue Code, but after excluding the value of all property passing or having passed outside this Will except joint tenancies) less the value of all property finally allowed as a marital deduction for property passing to my wife, other than property passing under this Article, and the denominator shall be the value of my entire residuary estate, all based on values as finally determined for Federal Estate Tax pur-

poses. The remaining fraction of my residuary estate shall be called "Trust A * * *."

The earlier will executed two weeks before the will admitted to probate and two days after the *inter vivos* trust contained a parenthetical phrase in the marital bequest which read, "as defined in the Internal Revenue Code," whereas the will admitted to probate contained the clause, "as defined in the Internal Revenue Code, but after excluding the value of all property passing or having passed outside this Will except joint tenancies." The two wills are otherwise identical except for a specific bequest of $1,000 to Mrs. Ericson's sister (Martha Cigolini) contained in the probated will. Neither the scrivener nor the trust officer of the executor bank could account for the inclusion of this parenthetical clause in the will.

The quoted Article IV 1(a) divided the residuary estate into two parts. Part A, the marital deduction share, went to the widow outright. Trust A, the remaining portion of the residuary estate, went to the widow for life with the remainder in further trust for the testator's nieces and nephews, the appellants herein. Article II directed that all death taxes be paid as follows:

> All inheritance, estate and succession taxes (including interest and penalties thereon) payable by reason of my death shall be paid out of and be charged generally against the principal of my residuary estate other than Part A, without reimbursement from any person.

The trial judge found that the maximum marital deduction based on an adjusted gross estate, including the *inter vivos* trust, is $1,809,671.67; that if the *inter vivos* trust were excluded from the numerator of the fraction, as provided in the will, the marital deduction would be $1,010,310.25, a diminution of almost $800,000 in the widow's outright share, and the federal estate tax would be increased by about $284,000.

The record supports the trial judge's findings that Ericson lived simply, his wealth was derived from inheritance, he retained stocks which had huge accretions in value, but he had no special training, business or financial experience. He sought the assistance of Malcolm Savage, plaintiff's trust officer, for the preparation of his will. He never saw the scrivener of the will until the day of its execution and gave him no instructions.

Ericson's testamentary intent communicated to Savage was simple and direct. He wanted two-thirds of his estate to go to his side of the family, his nieces and nephews, and one-third to his wife's side of the family, her only nephew. There was no discussion whatsoever about taxes or the marital deduction.

The tax plan was conceived entirely by Savage, whose intent was to maximize the marital deduction. The two-thirds, one-third division of the estate was adhered to by providing for testator's nieces and nephews as remaindermen of the *inter vivos* trust, which was roughly one-third of testator's assets, and of the nonmarital trusts which were to bear the estate and inheritance tax burden. The widow would provide for her nephew by a bequest of Part A which would be about one-third of testator's assets. If Mrs. Ericson predeceased her husband, her nephew would be the life beneficiary of the *inter vivos* trust and of the residuary estate with the remainder to his heirs.

The scrivener who had received instructions from either Savage or Mrs. Ericson to draft a new will providing for the specific bequest of $1,000 received no other instructions and could not account for the addition of the parenthetical phrase which has triggered the controversy before us. Savage also recalls nothing about this clause.

While the trial judge found Ericson's only expressed intent was to pass one-third of his assets to his wife's side of the family and two-thirds to his side of the family, he nevertheless held this intent, in accordance with "common human impulses and motivations," to be subordinate to an intent

to have his wife enjoy the maximum marital deduction and his estate suffer the least burden of taxes. Accordingly, he excised the parenthetical clause to achieve that result. He further held that, to the extent that Trust A was insufficient to pay death taxes, those taxes would be apportioned between Trust A and the *inter vivos* trust. By doing so a maximum marital deduction of $1,809,671.67 would be attained, and inclusion of the *inter vivos* trust in the computation of the marital deduction and charging the same with the excess taxes would reduce the federal estate tax to $323,712. This would further result in a widow's or marital share of 63% as against a nonmarital share (testator's nieces and nephews) of $1,071.552 or 37%.

Respondents, as did the trial judge, bottom their position that testator's dominant intention was to secure the maximum marital deduction on the presumption that testator would not have wanted a considerable portion of his assets to be consumed by death taxes. *Gesner v. Roberts,* 48 *N. J.* 379 (1967).

Appellants, however, contend that by applying the fundamental and general principles of will construction set forth in *Fidelity Union Trust Co. v. Robert,* 36 *N. J.* 561 (1962), the court could not reasonably find that testator's dominant plan and intent was to minimize estate taxes, citing *Surina v. Gilbert,* 54 *N. J.* 68 (1969), and *Bartel v. Clarenbach,* 114 *N. J. Super.* 79 (Ch. Div. 1971).

The issue presented may thus be framed as whether Ericson's expressed intent to divide his estate two-thirds, one-third, as outlined above, was sufficient to overcome the presumption stated in *Gesner, supra,* that a testator intends the maximum tax advantage for his estate and the maximum benefit to the spouse within the limits of his gift to her. In view of the record it cannot be said that Ericson had any actual intent to maximize the marital deduction although the trial judge attributed to testator the trust officer's intent which had been communicated to the scrivener. Appellants assert, however, that because of the inconsistent provisions of

the will, testator's expressed intent rather than his presumed intent should be controlling. On the other hand, respondents point out that the will clearly states the wife should receive that portion of the entire residuary estate which would secure the maximum marital deduction and that the testator, by executing the will, indisputably adopted the trust officer's tax plan. To effectuate such plan the conflicting parenthetical clause excluding the value of all property passing outside the will must be disregarded, particularly since it was incorporated in the will inadvertently.

Respondents further contend that the two-thirds, one-third plan was based on testator's gross assets and was conceived by him without regard to the impact of taxes on the estate and without regard to the consequences of a ruling that the *inter vivos* trust was established in contemplation of death.

Article II of decedent's will directs that all taxes payable by reason of his death shall be paid out of and be charged generally against the principal of his residuary estate other than Part A which is the marital deduction share. It is thus apparent that testator intended that all death taxes be paid out of Trust A. However, since Trust A is insufficient to pay all taxes because of the inclusion by Internal Revenue Service of the *inter vivos* trust in decedent's taxable estate, the question arises whether the marital share (Part A) or the *inter vivos* trust should be charged with the burden of those taxes that cannot be satisfied out of the nonmarital Trust A.

In *Hale v. Leeds*, 28 *N. J.* 277 (1958), our Supreme Court, in discussing New Jersey's Apportionment Statute, *N. J. S. A.* 3A:25–30 *et seq.*, stated:

The New Jersey Apportionment Statute was enacted to correct what was deemed to be the inequities of the common law rule, *i. e.*, in the absence of a clear *contra* intent on the part of the testator, the residuary estate was to bear the burden of federal estate and state inheritance taxes imposed against decedent's taxable estate. *Morristown Trust Co. v. McCann*, 19 *N. J.* 568 (1955). The Apportionment Statute was designed to change the common law presumption where the intention of the testator was unclear or unavailable. The statutory scheme simply stated is this: **In the absence of a clear**

contrary intent, the recipients of assets properly includable in the taxable estate of a decedent under the federal or state taxing acts shall pay a share of the tax in the proportion that the assets so received have contributed to the tax liability. [at 286]

It is the contention of appellants that the residuary estate should pay all death taxes despite the Apportionment Statute, emphasizing the exception to apportionment where a testator directs otherwise in his will. They assert that Article II of the will establishes an order of preference, *i. e.,* that taxes be first satisfied out of the residuary estate other than Part A, and if Trust A is insufficient, then out of the residuary estate.

Respondents argue that the *inter vivos* trust is chargeable with the payment of all death taxes which remain after exhaustion of Trust A, it being their position that death taxes are not to be paid from a maximum marital deduction gift unless the will clearly requires it. They further state that since the Apportionment Statute applies "in the absence of directions to the contrary," and there being no such directions in the will, that accordingly the statute applies after the exhaustion of Trust A and places the burden of taxes on the beneficiaries of the *inter vivos* trust, exonerating the marital deduction gift.

 In light of the basic principles of will construction set forth in *Fidelity Union Trust Co. v. Robert, supra,* and the judicial function of construing a will so as to ascertain and give effect to the probable intention of the testator, we are of the view that the trial judge erred in including the *inter vivos* trust in the computation of the marital deduction and in his excision of the parenthetical clause from the will in the face of the single expressed intention of the testator that his estate go two-thirds to his side of the family and one-third to that of his wife. However, we are of the further view that under the circumstances of this case the *inter vivos* trust rather than the marital deduction share should be charged with the balance due on account of taxes after the exhaustion of Trust A. Under this disposition the marital share would be $1,010,310.25; the nonmarital share would

be $1,548,977.47. The resulting 39%–61% distribution would most closely approximate the one-third, two thirds plan of distribution intended by testator as compared to the 63%–37% split which would result from the decision of the trial judge. Additionally, the marital share thus approximately equals in amount the share which would have passed to the widow if the *inter vivos* trust had not been held to have been made in contemplation of death.

Of controlling significance is the realization that the planner and scrivener of Ericson's will did not contemplate that the *inter vivos* trust would be included in his taxable estate and that the marital deduction was conceived and computed with respect only to his remaining assets. It is clear that testator intended that the irrevocable *inter vivos* trust was to eventually go to his nieces and nephews and their families and that he did not intend for his wife's family to get any part of the corpus of said trust.

We note also that by our holding respondent widow will receive the maximum tax benefit "within the limits of [the testator's] gift to her" *Gesner v. Roberts, supra,* 48 *N. J.* at 381. To hold that the widow is entitled to a marital deduction share of over $1,8 million, as did the trial judge, would be to allow an increased marital deduction beyond the intent of testator merely because of the unforeseen circumstances of testator's death within three years of the execution of the *inter vivos* trust. Furthermore, the widow will get the maximum marital deduction intended by testator.

It is our further view that the Apportionment Statute clearly mandates that the *inter vivos* trust be charged with the excess taxes. The will directs that all death taxes be paid from the "residuary estate other than Part A," thus evincing an intention to exonerate the marital share from any tax burden. It makes no provision for the present contingency of an insufficiency in Trust A. Since there is no "clear contrary intent," *Hale v. Leeds, supra,* 28 *N. J.* at 286, the Apportionment Statutes imposes on the recipients of assets properly includable in the taxable estate a share of the tax in the propor-

tion that the assets so received have contributed to tax liability. (Since the beneficiaries of Trust A and the *inter vivos* trust are identical, there is no need to prorate the tax burden.) This result is also supported by *N. J. S. A.* 3A:25–33 (ii), which provides that in the absence of directions to the contrary, a deduction allowed by reason of the relationship of a person to decedent (here the marital deduction) "inure[s] to the benefit of the * * * transferee."

Additional support for charging the *inter vivos* trust with the excess taxes may be found in the fact that it is the *inter vivos* trust which has generated the excess taxes. The parenthetical clause is consistent with the intent of testator regarding the division of his estate and that the *inter vivos* trust be free of any death taxes, all of which were to be paid out of Trust A. However, this tax plan was frustrated by Ericson's untimely death within the three-year period and the resultant inclusion by the Internal Revenue Service of the *inter vivos* trust (which would otherwise not have been subject to death taxes) in decedent's taxable estate. Moreover, testator imposed the initial tax burden on his nieces and nephews who are also the beneficiaries under the *inter vivos* trust.

Accordingly, the judgment of the Chancery Division is affirmed in part and reversed in part and the matter remanded for entry of judgment in accordance with this opinion.